BRIDGET LEAHEY, Appellant, *v.* JAMES LEAHEY ET AL., Respondents.

February 7, 1882.

1. The statute of frauds cannot be invoked to shield one guilty of fraud.

2. Where one makes an oral agreement to execute a mortgage upon land which he intends buying, to secure a loan made him upon the faith of that

promise, and then takes title to the land in himself and wife, and the wife refuses to execute the mortgage, she cannot plead the statute of frauds as a defence to an action to enforce the oral promise against the land.

APPEAL from the St. Louis Circuit Court, LINDLEY, J.
*Reversed and remanded.*

S. HERMANN, for the appellant: Where one party has completely performed his part of an agreement, the other party cannot plead the statute of frauds, if he has accepted and received the benefit of such performance. — *McConnell v. Braynor*, 63 Mo. 464; *Sugget v. Cason*, 26 Mo. 225; *Self v. Cordell*, 45 Mo. 346; *Townsend v. Hawkins*, 45 Mo. 288; *Wright v. Tinsley*, 30 Mo. 399; *Gupton v. Gupton*, 47 Mo. 47; *Sutton v. Hayden*, 62 Mo. 102; *Rhodes v. Outcalt*, 48 Mo. 367; *Lee v. Howe*, 27 Mo. 524.

E. A. B. GARESCHÉ, for the respondents: Payment is not performance or part performance so as to take the case out of the statute of frauds. — *Galway v. Shields*, 1 Mo. App. 549; *Park v. Leewright*, 20 Mo. 85.

BAKEWELL, J., delivered the opinion of the court.

The petition alleges that the defendants James and Mary Ann Leahey are husband and wife; that on May 6, 1878, one Gray, in consideration of $1,800, conveyed to defendants James and Mary Ann certain real estate described, upon which defendant James afterwards erected certain houses, at a cost of $4,000; that afterwards James and Mary Ann Leahey, in September, 1878, conveyed the property to defendant Uhlman, to secure a note of $2,300, representing money borrowed by James Leahey to erect these improvements; that before the date of Gray's deed, plaintiff owned United States bonds worth $1,400; that James Leahey requested plaintiff to lend him these bonds, in order that he might raise money with them towards buying the lands and putting up the buildings in question; that she did so, and James Leahey sold the bonds and used the

proceeds for the purpose he had mentioned; that, at the time that plaintiff delivered these bonds to Leahey, who is her son, it was agreed between plaintiff and James Leahey that the property to be puchased was to be her security for the loan; and that Leahey then and there agreed with plaintiff to execute the necessary papers and instruments to give her a valid lien upon the property for the amount and interest; it being understood, however, that Leahey was to borrow money upon the land to erect the improvements, which loan was to be a first lien. Plaintiff fully carried out the agreement on her part, and the money was used by James Leahey, partly to buy the land, and partly to build the houses. The money was lent to Leahey wholly on the faith of the security to be given upon the property. Plaintiff is old, feeble, and ignorant. James Leahey, without plaintiff's knowledge, and in fraud of her rights, took the conveyance from Gray to himself and his wife. His wife contributed nothing whatever towards buying the land or erecting improvements on it; the whole money, over and above the money lent by plaintiff and by the *cestui que trust* of Uhlman, was furnished by James Leahey. James Leahey, at the time the conveyance from Gray was made, was, and has ever since been, wholly insolvent, and not in a condition to make a voluntary conveyance; and has not, and had not then, any property, except this land. The agreement was not put in writing at the time, owing to confidence plaintiff had in her son. James Leahey is willing to carry out the agreement; but his wife refuses to join in putting any encumbrance on the property, which has greatly depreciated in value, so that a mortgage of James upon his interest in the equity of redemption would not be sufficient to secure plaintiff. The rents of the property are collected by an agent for James Leahey and his wife, and are deposited with defendant the Citizens' Saving Bank, and can be withdrawn only by the joint checks of James Leahey and his wife. Leahey and

his wife have quarrelled, and refuse to draw checks. Five hundred dollars of these rents are deposited in the bank; taxes are due on the property, and the property is in danger of being sold for taxes. There is also danger that, owing to these dissensions, the interest-notes secured by the deed of trust on the property will not be paid, and that the property may be sold for this default, and that should defendants James and wife withdraw the money from the bank it will be wasted by them and lost to plaintiff. The deed of trust to Uhlman is admitted to be a prior lien. The prayer is for an injunction as to the money, and that a receiver be appointed, and the $1,400 and interest declared a lien, etc.

The trustee in the deed of trust and the bank made default. James Leahey answers. He admits that he agreed to give his mother a mortgage upon the property in question for the loan, and says that he is willing to do so, but his wife refuses to join. He says that he does not remember the amount borrowed of his mother, and asks strict proof as to that. He also denies that the loan was to bear interest.

Mary Ann Leahey denies the allegations of the petition. She says that she and her husband are living apart, and that this proceeding is an attempt on the part of her mother-in-law and husband to deprive her of her interest in this property. She denies all knowledge or information of the alleged loan from Bridget Leahey to her son. She also sets up the statute of frauds as a defence.

On the trial, Mary Ann Leahey objected to the introduction of any evidence, on the ground that the petition states no cause of action. The objection was sustained, and a decree entered dismissing the bill.

The petition alleges fraud. The agreement was that James Leahey should take title in himself, and, having given a first mortgage to secure the person from whom he bor-

rowed money to build on the property, give a second mortgage to his mother. He fraudulently took the deed to himself and his wife. These are the allegations. The petition alleges insolvency on the part of the person making the agreement, at the time the agreement was made, and up to the date of the suit. The defendant who made the agreement admits in his answer that the agreement was made as charged in the petition. He requires proof only as to the amount of the loan, which he professes to have forgotten. He does not plead the statute.

The defendant who sets up the statute of frauds gave no consideration for the property. So far as she is concerned, she stands in the position which would be occupied by any third person to whom James Leahey, after taking a deed to the property in his own name, had conveyed it as a gift without executing the mortgage which he is said to have promised to his mother. This defendant stands in James Leahey's shoes.

The mere payment of the money would not, in itself, take the case out of the statute, as is said in *Galway* v. *Shields* (1 Mo. App. 546), to which respondent refers. But that case presents a state of facts entirely different from that set up by plaintiff here. Undoubtedly an agreement to execute a mortgage is invalid without writing; but an agreement to make a defeasance to an absolute conveyance is just as much so. And it has been held again and again, that, where there was a verbal agreement for an absolute conveyance of land and for a defeasance to be executed by the grantee, if, after receiving the absolute conveyance on the faith that he would make the defeasance, the grantee refuses to do so and pleads the statute, the plea will be overruled. The alleged fraud in this case, as in that, consists, not merely in the refusal to do what was agreed, but in defrauding plaintiff of her property by deceit. Defendant James Leahey does not plead the statute, nor, if

he did, ought it to avail him if the facts set forth in the bill are established.

A court of equity will not permit the statute of frauds to be used as a means of fraud by being set up as a shield by a person infected with fraud. Hill on Trust. 52. "Nothing is better settled," says Judge Story, in *Taylor* v. *Luther* (2 Sumn. 232), "than that the true construction of this statute does not exclude the enforcement of parol agreements respecting the sale of land in cases of fraud; for, as it has been very emphatically said, that would make a statute purposely meant to prevent fraud, the veriest instrument of fraud." Courts of equity are as much bound by the statutes as courts of law; but, in the exercise of their jurisdiction to relieve against the consequences of fraud, they do not hesitate to compel the performance of a verbal contract which falls within the statute where the refusal to execute it would amount to a fraud.

It may be that plaintiff may not make out her case on the trial. The circumstances that she makes this claim after the lapse of years, and after her son and daughter-in-law have quarrelled, and are living apart, are suspicious. But, in view of the allegations of the petition, and the answer put in by the other party to the alleged contract, we think that the learned judge of the trial court should have admitted plaintiff to prove, if she can, the facts alleged; and that the defence of the statute of frauds set up by defendant Mary Ann Leahey is not necessarily fatal to plaintiff's case.

The judgment will be reversed and the cause remanded. Judge Lewis is absent; Judge Thompson concurs.